UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>US Foods, Inc.</u>

    v.                                              Civil No. 17-cv-326-LM

<u>EBA Trust, Inc. D/B/A</u>
<u>Everything But Anchovies</u>
<u>and Maureen D. Bogosian</u>

### REPORT AND RECOMMENDATION

US Foods, Inc. ("US Foods") brought suit against EBA Trust, Inc. d/b/a Everything But Anchovies ("EBA") and Maureen Bogosian seeking to recover money for goods and services it provided to EBA under the terms of an agreement. On September 6, 2017, the Clerk of Court entered default against the defendants. Before the court for a Report and Recommendation is US Foods' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).[1] For the reasons that follow, the court recommends

---

[1] US Foods moved for default judgment under Federal Rule of Civil Procedure 55(b)(1), arguing that the Clerk of Court should enter default judgment in its favor because the amount it seeks under the parties' agreement represents a sum certain. Even though amounts owed under the parties' agreement could be considered a sum certain under Rule 55(b)(1), US Foods' request for attorneys' fees "prevents the clerk from entering a judgment under Rule 55(b)(1), since the reasonableness of the attorney[s'] fees necessitates a judgment call by the Court." <u>Int'l Union of Operating Engineers, Local 4 v. Stanley Excavation</u>, 243 F.R.D. 25, 27 (D. Me. 2007) (internal quotation marks and citation omitted). "If the plaintiff is seeking both a sum certain, which would fall under Rule 55(b)(1), and damages that require judicial determination under Rule 55(b)(2), the entire matter, including the sum certain, must be determined

that the district judge grant the motion in part and deny it in part.

## Standard of Review

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); see also KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). Before entering a default judgment, the court "may examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002) (quoting Guirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992)). The defaulted party is "taken to have conceded the truth of the factual allegations in the complaint . . . ." Ortiz-Gonzalez v. Fonovisa, 227 F.3d 59, 62-63 (1st Cir. 2002) (internal quotation marks and citation omitted). The defaulted party does not, however, "admit the legal sufficiency of those claims." 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). Therefore, before

---

under Rule 55(b)(2)." Id. (citing Conetta v. Nat'l Hair Care Ctrs., Inc., 186 F.R.D. 262, 268 (D.R.I. 1999) ("A case is either for a 'sum certain' or not. A party must choose one of the two procedures offered by Fed. R. Civ. P. 55(b) . . . ."), aff'd, 236 F.3d 67 (1st Cir. 2001)).

2

entering default judgment, the court must determine whether the admitted facts state actionable claims.  See Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. 12-cv-1401-AFF-MDG, 2013 WL 1232919, at *2 (E.D.N.Y. Mar. 4, 2013); E. Armata, Inc. v. 27 Farmers Market, Inc., No. 08-cv-5212-KSH, 2009 WL 2386074, at *2 (D.N.J. July 31, 2009).

## Background

By virtue of its default, the defendants concede the following facts alleged in the complaint: US Foods, a Delaware Corporation with its principal place of business in Illinois, is a food service distributor to various restaurants, healthcare and hospitality facilities, government operations, and educational institutions.  On or about July 19, 2012, US Foods entered into a Customer Account Application and Agreement (the "Credit Agreement") with EBA, a limited liability company from New Hampshire, to supply it with various food-related products and services in return for payment for such products and services.[2]  In addition, Maureen Bogosian, a Vermont resident,

---

[2] Neither the complaint, nor any of the evidence US Foods submitted in support of its motion for default judgment, specifies the exact products and services US Foods provided to EBA under the Credit Agreement.

3

signed the Credit Agreement as guarantor of EBA's obligations under the Agreement. See doc. no. 1-1 at 3.

Pursuant to the Credit Agreement, US Foods provided goods and services to EBA. Despite invoicing EBA for its goods and services, US Foods did not receive payment. When EBA failed to pay, Bogosian, as guarantor, was required to satisfy EBA's debt. She failed to do so.

## Discussion

US Foods brings four claims against EBA and one claim against Bogosian: (1) Breach of contract against EBA (Count I); (2) Breach of contract against Bogosian (Count II); (3) "Statement on Account" against EBA (Count III); (4) "Goods Sold" against EBA (Count IV); and (5) Unjust Enrichment against EBA (Count V).[3] US Foods seeks $137,604.32 in damages for the outstanding amount owed to it by the defendants under the Credit Agreement, plus an additional award of $12,384.39 in interest, which it asserts represents a rate of 1.5% per month from May 2017 through October 30, 2017, the date US Foods filed its motion for default judgment. US Foods also seeks an award of $11,291.14 in attorneys' fees and costs, as well as interest

---

[3] In its complaint, US Foods asserts Counts III-V against EBA "[i]n the alternative" to Count I.

from October 31, 2017 until the date it collects on the amount the defendants owe.

I.   **Breach of Contract against EBA (Count 1)**

Under Delaware law,[4] the elements of a claim for breach of contract are: (1) the existence of a contract between the parties, whether express or implied; (2) a breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff.  Micro Focus (US), Inc. v. Ins. Serv. Office, Inc., 125 F. Supp. 3d 497, 500 (D. Del. 2015).  Upon review of US Foods' complaint and the incorporated Credit Agreement, the court concludes that US Foods has adequately alleged each of these elements in the present case.

(1)  Valid Contract

Under Delaware law, a valid and enforceable contract requires: "(1) the intent of the parties to be bound; (2) sufficiently definite terms; and (3) consideration." Kyle v. Apollomax, LLC, No. 12-152-RGA, 2013 WL 5954782, at *2 (D. Del. Nov. 1, 2013) (citing Otto v. Gore, 45 A.3d 120, 138 (Del. 2012)).  US Foods has adequately pled the existence of a binding

---

[4] The Credit Agreement provides that it "shall be governed by and interpreted in accordance with the laws and decisions of the State of Delaware."  Doc. no. 1-1 at 2.

contract between itself and EBA. In its complaint, US Foods alleges that the Credit Agreement between itself and EBA constitutes a valid and binding contract. Pursuant to the language of the Credit Agreement, US Foods agreed to supply various food and food-related products and services to EBA. In return, EBA agreed to be bound by the terms of the Credit Agreement and pay all charges invoiced for such goods and services. The Credit Agreement was signed and executed by EBA on July 19, 2012. Based on the record before the court, the Credit Agreement became a valid and binding contract at that time. Thus, the district judge should find that the first element of a breach of contract claim is satisfied as to EBA.

(2)   Breach

US Foods has also adequately pled that EBA breached the Credit Agreement. As mentioned above, EBA agreed to be bound by the terms of the Credit Agreement and pay all charges set forth in each invoice. US Foods asserts that it supplied goods and services to EBA and rendered invoices to EBA for the delivery of said goods and services. EBA failed to pay US Foods the outstanding balance owed on such invoices. When accepting these allegations as true, US Foods has pled sufficient facts to establish that EBA committed a breach of the Credit Agreement.

6

The district judge should find that the second element of a breach of contract claim is met as to EBA.

### (3)  Resultant Damages

US Foods has adequately alleged that it suffered damages as a result of EBA's breach of the Credit Agreement. As of May 2017, EBA had failed to pay the outstanding invoices US Foods issued for its good and services. Under the terms of the Credit Agreement, US Foods is entitled to seek payment for all charges set forth in each invoice. The district judge should therefore find that US Foods has satisfied the third element of a breach of contract claim as to EBA.

## II.  Breach of Contract against Bogosian (Count II)

In its complaint, EBA alleges that Bogosian personally guaranteed the Credit Agreement and that, by virtue of that guaranty, Bogosian is personally liable for payment of EBA's obligations to US Foods. See doc. no. 1 at ¶¶ 11-12. The Credit Agreement supports this allegation. On July 19, 2012, Bogosian signed the Credit Agreement as guarantor and in doing so, "personally and unconditionally guarantee[d] the payment by Applicant to Sellers of all amounts due and owing now, and from time to time hereafter." Doc. no. 1-1 at 3. US Foods alleges that although it demanded payment from Bogosian under the Credit

7

Agreement after EBA did not pay the invoices, Bogosian failed to make such payments.[5] Accepting these allegations as true, Bogosian is in breach of her obligations under the Credit Agreement.

### III. Remaining Claims (Counts III-V)

US Foods brings three additional claims against EBA, all of which are brought "[i]n the alternative to Count I." US Foods does not address the individual claims in its motion for default judgment, instead arguing that it is entitled to the amount due under the outstanding invoices, as well as interest and attorneys' fees, pursuant to the terms of the Credit Agreement. Because the court recommends that the district judge find that US Foods has adequately alleged a breach of the Credit Agreement by EBA in Count I, the court recommends that the district judge deny US Foods' motion as to Counts III – V as moot, and it does not address those claims further.

### IV. Damages

"In the case of defaulting defendants, allegations of damages are not deemed admitted in the context of a default

---

[5] In addition, in support of its motion for default judgment, US Foods included as an exhibit a letter from Bogosian stating that she and EBA "are unable to satisfy the debt to US Foods." Doc. no. 14-3 at 1.

8

judgment, and it is the plaintiff's burden to establish any entitlement to recovery." Joe Hand Promotions, Inc. v. Rajan, No. 10-40029-TSH, 2011 WL 3295424, at *3 n.2 (D. Mass. July 28, 2011) (internal quotation marks and citation omitted).  US Foods seeks to recover damages for (1) the amounts due under the invoices; (2) interest from May 2017 through October 30, 2017, as well as interest from October 31, 2017 until the date it collects the outstanding amount owed by EBA and Bogosian; and (3) attorneys' fees and costs.

    (1)  Invoices

The Credit Agreement provides: "Payment of the purchase price for goods and/or services acquired from Seller shall be made pursuant to the terms set forth on each invoice, and Applicant agrees to repay all charges according to the payment terms established in said invoice."  Doc. no. 1-1 at 2.  It further provides: "The entire outstanding balance due to Seller on all invoices shall become due in full immediately upon default in the payment of any invoice."  Id.  Bogosian, as guarantor, agreed to be liable for these amounts in the event EBA failed to satisfy its obligations under the Credit Agreement.  See doc. no. 1-1 at 3.  Additionally, the Credit Agreement states that in the event of a default, US Foods has

9

"the right to proceed first against Guarantor, without proceeding with or exhausting any other remedies." Id.

In its complaint, US Foods seeks $133,642.40 in amounts invoiced to EBA for goods and services provided under the Credit Agreement. In its motion for default judgment, however, US Foods seeks to recover $137,604.32 for those amounts. In support of its motion, US Foods includes a declaration from its in-house counsel stating that $137,604.32 represents the amount due and owing for the invoices, see doc. no. 14-1 at ¶¶ 8, 9, as well as a table listing each of the outstanding invoices and the amounts due thereunder, see id. at 5-6.[6]

Federal Rule of Civil Procedure 54(c) states in pertinent part that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." "Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount." Trustees of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Sheehe, No. CIV.A. DKC 11-0365, 2011 WL 5034830, at *2 (D. Md. Oct. 21, 2011); see also Outram v. Outram, No. CV 08-3437 ADS ETB, 2010 WL 1222935, at *2 (E.D.N.Y. Mar. 4, 2010) (holding that in the context of a motion for default judgment,

---

[6] Although the table does not include a total, the court has confirmed that the amount of the outstanding invoices in the table comes to $137,604.32.

10

the "plaintiff may not recover money damages in excess of that pleaded in her Amended Complaint"), report and recommendation adopted, No. 08-CV-3437 ADS ETB, 2010 WL 1222893 (E.D.N.Y. Mar. 23, 2010); Jackson v. Vogt, No. 09-4569, 2009 WL 3756563, at *3 (E.D. La. Nov. 5, 2009) (awarding the plaintiff the amount alleged in his complaint despite evidence submitted with motion for default judgment showing plaintiff may be entitled to an additional $138).

US Foods does not explain the discrepancy between the damages it alleges in its complaint and the amount it now seeks in its motion for default judgment.  Therefore, US Foods is limited to the damages alleged in its complaint, and the court recommends that the district judge award damages in the amount of $133,642.40 for amounts due under the invoices.

(2)   Interest

The Credit Agreement provides that the "Applicant agrees to pay interest in the amount of 1.5% per month . . . on any payment considered past due until collected."  Doc. no. 1-1 at 2.  Bogosian also agreed to pay 1.5% interest per month on any amount outstanding until collected.  Id. at 3.

US Foods seeks $12,384.39 in interest, which it asserts represents 1.5% interest on the amount owed under the invoices from May 2017, when EBA and Bogosian failed to pay the

11

outstanding invoices, until October 30, 2017, the date it filed its motion for default judgment. That amount, however, is calculated off of the $137,604.32 figure that US Foods seeks in its motion for default judgment. Because US Foods is entitled to recover only $133,642.40 under the invoices, as it alleged in the complaint, the interest must be reduced. Therefore, the court recommends that the district judge award US Foods $12,027.82 in interest from May 2017 through October 30, 2017.[7]

### (3)  Attorneys' Fees and Costs

The Credit Agreement provides: "Applicant agrees to pay all costs of collection incurred by Seller, including reasonable attorneys' fees and expenses, should a default in payment or any other obligation of Applicant occur." Doc. no. 1-1 at 2. It further states: "the Guarantor agrees to pay all costs, expenses and fees, including reasonable attorneys' fees and expenses, which may be incurred by Sellers in enforcing this Guaranty or protecting their rights following any default on the part of the Guarantor." Id. at 3.

---

[7] Under the terms of the Credit Agreement, US Foods is also entitled to recover 1.5% interest per month from October 31, 2017 until the date on which judgment is entered. Therefore, the court recommends that the district judge award interest in that amount. The court also recommends that the district judge direct the Clerk of Court to impose post-judgment interest.

12

An award of reasonable attorneys' fees is typically calculated by the lodestar method in which the court multiplies the hours productively spent by a reasonable hourly rate. Spooner v. EEN, Inc., 644 F.3d 62, 67-68 (1st Cir. 2011). "'Reasonable hourly rates will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria.'" Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011) (quoting United States v. One Star Class Sloop Sailboat, 546 F.3d 26, 38 (1st Cir. 2008)).  The determination of what constitutes a "reasonable" fee is left to the court's discretion.  de Jesus v. Banco Popular de P.R., 918 F.2d 232, 233-34 (1st Cir. 1990).

The party seeking a fee award bears the burden of producing materials to support the request.  Hutchinson, 636 F.3d at 13. "Appropriate supporting documentation includes counsel's contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel." Spooner, 644 F.3d at 68; see also Bogan v. City of Boston, 489 F.3d 417 (1st Cir. 2007).

US Foods seeks an award of $10,532.30 in attorneys' fees and $758.84 in costs.  It submits a declaration from its counsel, who states that Bryan Cave LLP has billed US Foods $6,356.30 in legal fees, and local counsel has billed US Foods

13

$4,176 in such fees. The statements in support of those amounts, however, are inadequate.

US Foods' counsel represents in her declaration that the attorneys' fees and costs represent the "costs for pre-complaint investigation, preparing and filing the Summons and complaint, paying the fees associated with filing the Complaint and initiating this action, serving the Defendants in this action with the Complaint, preparing the instant Motion for Default Judgment, research for this Motion, and local counsel fees." Doc. no. 14-2 at ¶ 7. She further states she reviewed invoices from Bryan Cave, that the work shown on those invoices was reasonably necessary, and that the "rates reflected in the invoices are reasonable in the relevant legal community for the legal institution and experience level of the attorneys working on this matter." Id. at ¶ 14. Nowhere, however, does counsel detail the hours billed on the case, or either Bryan Cave's or local counsel's rates. Nor does she detail the actual costs incurred, separate and apart from any legal work performed.

The above representations, unbolstered by any supporting documentation, do not provide the court with sufficient information to determine whether US Foods' request is reasonable. Spooner, 644 F.3d at 68. The court therefore recommends that the district judge deny US Foods' request for attorneys' fees and costs without prejudice to renewal, with

14

sufficient supporting documentation, within fifteen (15) days of the date of the district judge's order either approving or rejecting this Report and Recommendation.

## Conclusion

For the foregoing reasons, the court recommends that the district judge: (1) grant US Foods' motion for default judgment (doc. no. 14) on Counts I and II; (2) deny as moot US Foods' motion for default judgment as to Counts III, IV, and V; (3) award US Foods $145,670.22 in past due invoices plus interest accrued since October 31, 2017 and continuing at a rate of 1.5% on the awarded outstanding invoice balance of $133,642.40 until judgment is entered; (4) direct the Clerk of Court to impose post-judgment interest; and (5) deny US Foods' request for attorneys' fees and costs without prejudice to renewal within fifteen (15) days of the date of the district judge's order on this Report and Recommendation.

Any objection to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen day period may be extended upon motion. Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos

v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 18, 2018

cc: Maria Vathis, Esq.
    Stephen L. Rossetti, Jr., Esq.

16